# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
    **Plaintiff,**

  v.                                                                                    Case No. 03-CR-294

**ABRAHAM SALAZAR-HERNANDEZ,**
    **Defendant.**

## SENTENCING MEMORANDUM

The mandatory federal sentencing guidelines strictly limited the ability of district courts to impose sentences outside the prescribed range. However, now that the guidelines are advisory, United States v. Booker, 543 U.S. 220 (2005), courts may consider factors that the guidelines treated as irrelevant and where appropriate may find that the range called for by the guidelines is excessive. In certain cases that were in the appellate pipeline when the Court decided Booker, district courts have been afforded a chance to resentence defendants under the advisory guidelines and thus give greater consideration to the particular circumstances of the case than was possible at the original sentence. The present case is an example.

## I.  BACKGROUND

On March 5, 2004, defendant Abraham Salazar-Hernandez pleaded guilty to unlawful re-entry after deportation. 8 U.S.C. § 1326. The probation office prepared a pre-sentence report ("PSR"), which calculated defendant's offense level as 21 (base level 8, U.S.S.G. § 2L1.2(a), plus 16 because the government deported him after his conviction of a "drug trafficking offense," § 2L1.2(b)(1)(A)(i), minus 3 for acceptance of responsibility, § 3E1.1) and

his criminal history category as II, producing an imprisonment range of 41-51 months under the then-mandatory sentencing guidelines.

Defendant moved for a downward departure from the guideline range based on his efforts to treat a substance abuse problem, extraordinary family circumstances and his cultural assimilation to the United States. At that time, courts could depart only if they found the presence of an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. Generally speaking, courts could not grant relief from the guidelines unless they found the case extraordinary, and the courts of appeals zealously enforced the limitation. See, e.g., United States v. Bautista, 258 F.3d 602 (7th Cir. 2001).

In the present case, although I found defendant's treatment efforts laudable and his family ties in and cultural assimilation to the United States significant, I concluded that such factors did not warrant a downward departure and sentenced defendant to 41 months in prison. I stated that under the circumstances I considered the penalty harsh, but that defendant had not satisfied the demanding departure standard and that the guidelines prohibited me from showing mercy in any other way.

Defendant appealed, and while the case was pending the Supreme Court issued its decision in Booker. The Seventh Circuit then ordered a limited remand pursuant to United States v. Paladino, 401 F.3d 471 (7th Cir. 2005). Paladino set forth the Seventh Circuit's procedure for determining whether the defendant was harmed by the district court's error (in light of Booker) in imposing sentence under the mandatory guideline regime. The court said: "The only practical way (and it happens also to be the shortest, the easiest, the quickest, and the surest way) to determine whether the kind of plain error argued in these cases has

-2-
Case 2:03-cr-00294-LA   Filed 05/01/06   Page 2 of 10   Document 41

actually occurred is to ask the district judge." Id. at 483. If on a limited remand to answer this question the district judge advised that he would adhere to the original sentence, the court of appeals would affirm so long as the sentence imposed was "reasonable," the applicable appellate standard of review post-Booker. If, on the other hand, the district judge stated that he would have imposed a different sentence had he known the guidelines were merely advisory, the appellate court would vacate the original sentence and remand for re-sentencing. Id. at 484.

Upon receipt of the limited remand order, I directed the parties to file briefs, and then issued a memorandum indicating that I would likely impose a lower sentence:

> First, at the original sentencing, I denied defendant's requests for downward departure but noted the harshness of the penalty he faced and my inability under the then-mandatory guidelines to show mercy in any other way. (Sen. Tr. at 29.) With the guidelines no longer mandatory, the court may consider additional mitigating circumstances under 18 U.S.C. § 3553(a). Second, I have, in a post-Booker illegal re-entry case, declined to follow the advisory guidelines because they produced unwarranted disparity due to their authorization of so-called "fast track" programs in some districts and required imposition of a 16 level enhancement, which was, under the facts of the case, out of proportion to any reasonable assessment of dangerousness. United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 962-63 (E.D. Wis. 2005); see also United States v. Ramirez-Ramirez, 365 F. Supp. 2d 728 (E.D. Va. 2005). It appears that defendant in the present case may be eligible for a non-guideline sentence to account for at least one of these factors.

(R. 33 at 2.)

The court of appeals then vacated the sentence and remanded for re-sentencing. The government asked me to reimpose the 41-month term, while defendant requested a time-served disposition. Upon consideration of the relevant factors, I imposed a sentence of 33 months. In this memorandum, I set forth the reasons.

-3-
Case 2:03-cr-00294-LA    Filed 05/01/06    Page 3 of 10    Document 41

## II. SENTENCING FACTORS

After Booker, I must consider all of the factors set forth in 18 U.S.C. § 3553(a) in imposing sentence. These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

My task after considering the above factors is to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2).

Although under the advisory regime I must seriously consider the guidelines, I need not employ the old departure methodology to impose a sentence outside of the range. "The guidelines are not binding, and courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland.' Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons

tied to the § 3553(a) factors." United States v. Ranum, 353 F. Supp. 2d 984, 987 (E.D. Wis. 2005). Thus, in the present case, I factored into the sentence mitigating circumstances which I had found insufficient to merit a departure at the original sentencing.

### III. DISCUSSION

In 1985, defendant, who is now forty-two, illegally entered the United States from Mexico in search of a "better life." His parents remained in Mexico but had green cards and moved freely between the two countries. Eight of his ten siblings moved to the United States from Mexico and became citizens. In 1995, defendant married a United States citizen. In addition, he has a teen-aged daughter from a prior relationship, also a citizen. Defendant, however, never acquired legal status.

While in the United States, defendant worked, although usually for cash and at times using a false social security number, which made it difficult for the probation office to substantiate his employment. In the late 1980s, defendant committed two drunk driving offenses and in 1995 received a three-year sentence for possession of marijuana with intent to deliver. He made good use of his time in prison, taking classes and participating in a substance abuse program. Upon his release, the government deported him. In 2002, defendant illegally re-entered the country to be closer to his wife and daughter. His wife was disabled at the time and suffering serious economic hardship. In 2003, immigration authorities found him, leading to the present charge.[1]

Because defendant re-entered the United States to be with his family and was convicted of no new crimes upon re-entry, I did not consider the offense to be aggravated.

---

[1] It appears that defendant was found after being arrested on a warrant issued by the Milwaukee County Circuit Court on a battery charge involving his wife. That charge was later dismissed, however.

Defendant displayed some positive character traits, including his efforts to treat his substance abuse problem, to advance his education while in prison and to help his family. On the negative side, however, defendant used alcohol and cocaine after re-entry. Because defendant had a minimal record, I concluded that he did not present a danger or particular risk of recidivism. Nevertheless, I considered a substantial period of confinement necessary to promote respect for immigration law and to deter defendant and others from re-entering the country. Although he had some substance abuse treatment needs, I could not tailor the sentence to account for those needs other than in a confined setting.

The guidelines called for a term of 41-51 months. For several reasons, I concluded that a sentence in this range would be greater than necessary to satisfy the purposes of sentencing.

First, the range was greatly increased by the 16 level enhancement under § 2L1.2(b)(1)(A)(i). The guidelines provide graduated penalties in illegal re-entry cases based on the perceived seriousness of the offense that precipitated deportation. See § 2L1.2(b). However, in the present case, that offense – a non-violent marijuana possession case involving a minimal amount of controlled substances – was not worthy of a 16 level increase. See Galvez-Barrios, 355 F. Supp. 2d at 962-63 (discussing how the 16 level enhancement can lead to over-stated penalties for some defendants). The federal guideline offense level for the crime would likely have been 12, see U.S.S.G. § 2D1.1(c)(14),[2] permitting a sentence of less than 13 months, which would not have triggered

---

[2] Defendant possessed 670 grams of marijuana and 12.69 grams of cocaine. One gram of cocaine converts to 200 grams of marijuana under § 2D1.1. Adding the 2538 grams (12.69 x 200) of marijuana-equivalent to the 670 grams of actual marijuana produces a total drug weight of 3.2 kg, which results in an offense level of 12 under § 2D1.1(c).

the 16 level enhancement,³ see § 2L1.2(b)(1)(A) (stating that a sentence on a drug trafficking offense must exceed 13 months to warrant a 16 level enhancement). However, the state court imposed a sentence of three years, and that sentence determined defendant's guideline range. This is the type of circumstance that I may consider under § 3553(a)(1) in determining whether the sentence called for by the guidelines is greater than necessary to serve the purposes of sentencing. Post-Booker, a court must critically evaluate whether application of a particular guideline makes sense under the facts of the case.⁴

Second, under § 3553(a)(1), I gave weight to the fact that defendant re-entered the United States for the purpose of joining and assisting his wife and his daughter. See Galvez-Barrios, 355 F. Supp. 2d at 964 (noting that a defendant's positive motive for re-entry may weigh in favor of a below guideline sentence); see also United States v. Peralta-Espinoza, 383 F. Supp. 2d 1107, 1112 (E.D. Wis. 2005) ("A defendant who returns to be with his wife and children . . . is much more deserving of leniency than one who returns to sell drugs[.]"). There was some tension between defendant and his wife at the time of his arrest (he was living with a cousin then), but she appeared in court in support of him, and there was no dispute either as to his motive or her genuine need of his help. Although at the original sentencing I denied defendant's request for a departure based on cultural assimilation and family circumstances, under Booker, I have greater discretion to consider these mitigating circumstances. Indeed, one significant difference between the

---

³With no reduction for acceptance of responsibility (defendant went to trial) or other enhancements, defendant's range would have been 12-18 months in criminal history category II (the likely category given his two drunk driving convictions from the late 80s).

⁴I do not suggest that prior state sentences should always be translated into guideline sentences. However, as I noted in Galvez-Barrios, not all defendants who technically qualify for a 16 level enhancement deserve it.

mandatory and advisory regimes is the court's ability to consider motive. See, e.g., United States v. Milne, 384 F. Supp. 2d 1309, 1312 n.4 (E.D. Wis. 2005).[5]

Third, I took into consideration the fact that the United States would deport defendant when he had completed his sentence and that as a result he would be separated from his wife, child and eight of his ten siblings. Although defendant brought the problem on himself by not seeking lawful admission, under Booker, I may consider the added punitiveness resulting from a separation of this type.

For the foregoing reasons, which tracked those that I identified to the Seventh Circuit in my Paladino statement, I imposed a sentence below the guideline range. I concluded that under all the circumstances, I could satisfy the purposes of sentencing by imposing a sentence of 33 months and that a more severe sentence would have been greater than necessary. I considered such sentence, effectively 2 levels lower than that called for by the guidelines, sufficiently severe to promote respect for law and deter others, while recognizing the mitigating factors I discussed. I saw no added deterrent value in requiring defendant to serve an additional eight months in prison.

Defendant also asked for a below-guideline sentence under 18 U.S.C. § 3553(a)(6) to account for the disparity created by this district's lack of a fast-track program. Fast track programs, initially designed to help busy border districts process more immigration cases, provide for sentence reductions if defendants promptly plead guilty. Galvez-Barrios, 355 F. Supp. 2d at 963. However, in United States v. Galicia-Cardenas, No. 05-3093, 2006 U.S. App. LEXIS 7415, at *4 (7th Cir. Mar. 24, 2006), the Seventh Circuit vacated a sentence

---

[5] I also noted that defendant had generally behaved well since re-entering. He was convicted of no new crimes (and his prior record was minimal). The government noted that defendant had a pending battery charge at the time the original PSR was prepared, but, as discussed, that charge was later dismissed on the motion of the state.

based on fast-track disparity and remanded for re-sentencing "without a credit for Wisconsin's lack of a fast-track program." The court did not explain its decision, merely citing a case decided the day before which held that district courts are not <u>required</u> to account for this disparity. <u>United States v. Martinez-Martinez</u>, 442 F.3d 539 (7th Cir. 2006). Initially, the court did not publish <u>Galicia-Cardenas</u> but subsequently did so at the government's request. Therefore, it has the form of a short Rule 53 Order. I hope that the court of appeals will address the issue in greater detail. Fast-track disparity has become a hotly debated issue post-<u>Booker</u>. <u>See, e.g.</u>, <u>Peralta-Espinoza</u>, 383 F. Supp. 2d at 1108 (collecting cases). While a few circuits have held that a sentence is not unreasonable just because it does not include a fast-track reduction, <u>e.g.</u>, <u>United States v. Montes-Pineda</u>, No. 05-4471, 2006 U.S. App. LEXIS 10178, at *11-13 (4th Cir. Apr. 24, 2006); <u>United States v. Sebastian</u>, 436 F.3d 913, 916 (8th Cir. 2006); <u>United States v. Morales-Chaires</u>, 430 F.3d 1124, 1131 (10th Cir. 2005), none have previously <u>prohibited</u> consideration of fast-track disparity.

In any event, in the present case, I did not have to consider this factor in conjunction with others, even if I was permitted to, because the sentence imposed was sufficiently supported by the reasons discussed above. I would not have imposed any lesser sentence even if I could consider fast-track disparity or the related equal protection argument defendant made.

Finally, my sentence created no unwarranted disparity because I hewed relatively closely to the guidelines and justified the sentence based on the particular facts of the case. The guidelines themselves account for gradations of offenses leading to deportation, as did the present sentence.

## IV. CONCLUSION

Thus, I imposed a sentence of 33 months. I originally imposed a $200 fine, $75 of which had been paid as of the re-sentencing date. In review of defendant's financial situation, and given his imminent deportation and thus the impracticality of collection, I waived the balance of the fine. Upon release, I placed him on supervised release for two years, the conditions of which appear in the judgement.

Dated at Milwaukee, Wisconsin, this 1st day of May, 2006.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge